24CA1887 Peo in Interest of ZF 04-17-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1887
El Paso County District Court No. 23JV30337
Honorable Lin Billings Vela, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of Z.F., a Child,

and Concerning D.F.,

Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE LUM
Fox and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 17, 2025

---

Kenneth R. Hodges, County Attorney, Melanie E. Gavisk, Assistant County Attorney, Colorado Springs, Colorado, for Appellee

Kate Harvey, Guardian Ad Litem

Josi McCauley, Counsel for Youth, Superior, Colorado, for Z.F.

Michael Kovaka, Office of Respondent Parents' Counsel, Littleton, Colorado, for Appellant

¶ 1     In this dependency and neglect proceeding, D.F. (mother) appeals the judgment terminating her parent-child legal relationship with Z.F. (the child).  We affirm.

## I.     Background

¶ 2     The El Paso County Department of Human Services (Department) initiated this case based on concerns about mother's substance use and mental health.  The child was thirteen years old when the Department filed the petition in dependency and neglect.  The child had been adjudicated dependent and neglected as to mother on three previous occasions in Colorado, all of which opened due to substance use concerns.

¶ 3     In this case, the juvenile court adjudicated the child dependent and neglected and adopted a treatment plan for mother, which required her to (1) address her mental health and medical needs; (2) maintain communication with the Department; and (3) engage in family time.  The first objective required, among other things, that mother participate in a substance use assessment and complete any recommended substance use treatment.

¶ 4     The Department later moved to terminate mother's parental rights.  A year and a half after the Department filed the petition and

1

after a termination hearing, the court terminated the parent-child legal relationship between mother and the child.

## II. Reasonable Efforts

### A. Applicable Law and Standard of Review

¶ 5 The juvenile court may terminate a parent's rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent and neglected; (2) the parent has not reasonably complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time. § 19-3-604(1)(c), C.R.S. 2024.

¶ 6 To determine whether a parent is unfit, the juvenile court must consider whether the department of human services made reasonable efforts to rehabilitate the parent and reunite the family. *See* §§ 19-3-100.5(1), 19-3-604(2)(h), C.R.S. 2024; *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011). "Reasonable efforts" means the "exercise of diligence and care" for children who are in out-of-home placement. § 19-1-103(114), C.R.S. 2024. Services provided in accordance with section 19-3-208, C.R.S. 2024, satisfy the reasonable efforts standard. § 19-1-103(114).

¶ 7    Among other services, section 19-3-208 requires screenings, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; family time services; and placement services. § 19-3-208(2)(b). Other services, such as transportation assistance, mental health services, and drug and alcohol treatment services, must be provided if determined "necessary and appropriate" and if the government has sufficient funding. § 19-3-208(2)(d).

¶ 8    In assessing the department's reasonable efforts, the juvenile court should consider whether the services provided were appropriate to support the parent's treatment plan, *S.N-V.*, 300 P.3d at 915, by measuring the services and resources provided holistically rather than in isolation, *People in Interest of E.D.*, 2025 COA 11, ¶ 11. But the parent is ultimately responsible for using those services to obtain the assistance needed to comply with the treatment plan. *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011). "The court may therefore consider a parent's unwillingness to participate in treatment when determining whether

a department made reasonable efforts." *E.D.*, ¶ 12; *see People in Interest of A.V.*, 2012 COA 210, ¶ 12.

¶ 9 Whether a department of human services satisfied its obligation to make reasonable efforts is a mixed question of fact and law. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. We review the court's factual findings for clear error but review de novo its legal determination, based on those findings, as to whether the department satisfied its reasonable efforts obligation. *Id.* A factual finding is clearly erroneous only when there is no support for it in the record. *People in Interest of A.J.L.*, 243 P.3d 244, 250 (Colo. 2010).

## B. Additional Background

¶ 10 Mother and the child were living in Monument when the case opened. The child was placed in foster care in Colorado Springs. Mother moved multiple times but ultimately relocated to a permanent home in Denver about a year into the case. At the time of the hearing, mother had one supervised family time session every Saturday in Colorado Springs.

## C.  Analysis

¶ 11  Mother argues that the Department did not make reasonable efforts because it failed to provide services in areas reasonably accessible to her, which substantially hindered her ability to access the services.  We are not convinced.

¶ 12  In support of its determination that the Department made reasonable efforts, the court made several factual findings.  The court found there was "no doubt that during the entirety of this case," the caseworker was "repeatedly trying to engage mother." But it found mother's lack of communication and unwillingness to share her address information "created a barrier" for the Department's ability to locate service providers.  And it found mother's lack of communication and cooperation had a "devastating impact" on her ability to complete the treatment plan because "it directly interfered with the [D]epartment's ability to ensure that there was always an available referral for services."

¶ 13  The record supports the court's findings and shows that mother's lack of communication about her whereabouts hindered the Department's ability to refer her for services.  For instance, the caseworker testified that the Department found services in the

Loveland area when mother indicated she intended to move there, but — without notifying the Department — mother moved to Denver instead. When the Department learned of mother's move to Denver, it located services in Denver, but because mother didn't provide her exact address, the services were still "farther from [mother] than was ideal." And when the Department finally learned mother's address and found a drug-testing facility minutes from mother's apartment, mother moved again. Mother also testified that she did not want to provide the Department with any of her information.

¶ 14 To the extent that mother contends on appeal that the Department did not sufficiently assist her with travel from Denver to Colorado Springs for family time, the court found, with record support, that the Department provided more than $5,000 in financial assistance, which included assistance intended to offset her travel costs. That assistance included gas cards, rental assistance, a new phone, and a two-month stay at a hotel. The Department also offered further rental assistance, but mother did not return the paperwork required to initiate it.

¶ 15 Moreover, despite the services and financial assistance offered, mother did not engage in services. The juvenile court properly

considered this and made extensive findings about the same. For example, the court found that mother "refused" to engage in substance use treatment, rejected expanding visits from one to two days a week "because that would interfere with her . . . personal time," and did not sign necessary releases of information (ROIs).

¶ 16     The record supports these findings as well. The Department sent three referrals for mother's substance use evaluation, which took mother six months to complete. Then, after she declined to participate in outpatient substance use treatment in person, the Department eventually referred her for virtual treatment, which she did not participate in either. Mother testified that while she was willing to do substance use treatment virtually, she did not think she needed substance use treatment. And the caseworker testified that mother did not sign or revoked necessary ROIs and, further, that mother maintained she did not have time for a treatment plan. Finally, mother testified that she would not agree to expanding her family time if it took place in Colorado Springs; specifically, she testified, "I'm not driving back and forth and not having any time for me to take care of my house and myself."

¶ 17   Accordingly, the court properly considered mother's lack of engagement in services and communication with the Department in its determination that the Department made reasonable efforts. *See E.D.*, ¶ 12 (the court may consider a parent's unwillingness to participate in treatment in reasonable efforts determination); *see also J.C.R.*, 259 P.3d at 1285 (the parent is ultimately responsible for utilizing the services provided); *cf. A.V.*, ¶ 12 ("[T]he Department is not required to provide active efforts to a parent who voluntarily absents himself or herself from a proceeding and cannot be located."). And because the record supports the court's findings about the Department's efforts and mother's lack of engagement and communication, we won't disturb its reasonable efforts determination.

## III.   Disposition

¶ 18   The judgment is affirmed.

JUDGE FOX and JUDGE GOMEZ concur.